**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Abound Solar Manufacturing, | : | |
| LLC, Abound Solar | : | Case No. 12-11974 (MFW) |
| Technology Holdings, LLC, | : | (Jointly Administered) |
| Abound Solar, Inc., | : | |
| | : | |
| Debtors. | : | |
| ──────────────────────── | : | |
| | : | |
| 9586 LLC, A COLORADO | : | |
| LIMITED LIABILITY COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No. 15-50057 (MFW) |
| v. | : | |
| | : | |
| GREAT AMERICAN GROUP LLC, A | : | |
| CALIFORNIA LIMITED | : | |
| LIABILITY COMPANY, THE | : | |
| BRANFORD GROUP, A | : | |
| CONNECTICUT CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| ──────────────────────── | : | |

### MEMORANDUM OPINION[1]

Before the Court is the Motion of Great American Group LLC and The Branford Group (the "Defendants") to Dismiss the adversary complaint ("Complaint") filed by 9586 LLC (the "Plaintiff").

---

[1] The Court is not required to state findings of fact or conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Accordingly, the facts recited are those averred in the Complaint, which must be presumed as true for the purposes of the Motion to Dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Defendants conducted the auction of certain contaminated assets of the Debtors[2] at the Plaintiff's property in Longmont, Colorado (the "Property").  The Plaintiff, as assignee of the Trustee[3], asserts the following claims: breach of contract, negligence, unjust enrichment, fraud, violation of the Colorado Consumer Protection Act (the "CCPA"), and negligent misrepresentation.  In addition, the Plaintiff asserts its own claims for negligence and nuisance.

The Court will dismiss the unjust enrichment claim because a valid contract governs the parties' relationship.  The Court will also dismiss the CCPA claim for Plaintiff's failure to state a claim.  The Court will deny the motion with respect to the other claims.

I.    BACKGROUND

The Debtors operated a solar panel manufacturing business. As part of President Obama's Stimulus Plan, the Debtors received approximately $400 million in loans from the United States Department of Energy (the "DOE"), secured by a first priority lien on all of the Debtors' assets.  The Debtors leased the

---

[2]  The Debtors are Abound Solar Manufacturing, LLC, Abound Solar Technology Holdings, LLC, and Abound Solar, Inc.

[3]  The Trustee is Jeffrey Burtch who was appointed the chapter 7 trustee of the Debtors' estate shortly after the Debtors filed their petitions on July 2, 2012 (the "Petition Date").

Property from the Plaintiff for solar panel production.  The Property contained an isolated area, in which cadmium and tellurium, two cancer-causing chemicals, were deposited onto the solar panels (the "Restricted Area").

In 2012, the Debtors ceased operations and filed voluntary petitions under chapter 7.  As of the Petition Date, the hazardous chemicals were only contained inside the Restricted Area or inside certain laser scribes and etching machines located outside the Restricted Area.

Post-petition, the Trustee decided to auction the remaining assets at the Property.  To fund the liquidation of the Debtors' estate, the DOE and the Trustee entered into a cash collateral agreement.  On August 8, 2012, the Court approved the agreement.

Shortly thereafter, the DOE and the Trustee solicited proposals from auctioneers.  The Trustee and the DOE interviewed several auctioneers, including the Defendants who submitted a written proposal (the "Proposal"), which highlighted the Defendants' expertise in liquidating solar panel manufacturing facilities.  The Defendants were selected to serve as the auctioneers.  The Trustee and the Defendants, with the approval of the DOE, entered into a Consulting and Auction Agreement (the "Auction Agreement").  On September 6, 2012, the Trustee's motion for approval to conduct the auction was granted by the Court.

Prior to the auction, the Trustee and the DOE engaged Advanced Chemical Transport ("ACT"), an environmental clean-up company, to prepare the assets for auction.  ACT cleaned up certain surfaces in the Restricted Area and issued a report stating that the contamination level was sufficiently low to allow potential buyers to inspect the equipment.  The Complaint alleges that "ACT recommended the use of protective shoe covers and gloves, designated entry and exit portals, prohibition of food, cosmetics, and cell phone use, and hand washing upon exit of the Restricted Area."  The Defendants advocated that the requirement for protective equipment be dropped to prevent a "chilling effect" on the auction.  The requirements were removed.

On October 1, 2012, potential buyers toured the facilities. The auction took place on October 2-3, 2012.  The Defendants managed and supervised the auction and the disassembly and removal of purchased equipment.  No environmental health or safety protocols were implemented by the Defendants during or after the auction.  Post-auction testing revealed that areas outside the Restricted Area had been contaminated.

On January 17, 2013, the Plaintiff filed proofs of claim seeking compensation for the pre- and post-petition contamination of the Property.  In addition, the Plaintiff initiated an adversary proceeding against the Debtors' former insurer, Chubb Custom Insurance ("Chubb"), asserting claims under the Debtors'

environmental pollution policy.  In May 2014, the Plaintiff, the Trustee, Chubb, and the DOE reached a court-approved settlement of those claims (the "Settlement Agreement").

Pursuant to the Settlement Agreement, the Trustee agreed to pay more than $4 million to the Plaintiff and assigned to it any claims the Trustee had against the Defendants.  On January 19, 2015, the Plaintiff initiated this adversary proceeding against the Defendants.  On April 17, 2015, the Defendants filed a motion to dismiss the Complaint for failure to state a claim (the "Motion to Dismiss").  Briefing on the Motion to Dismiss was completed on June 30, 2015.  The matter is ripe for decision.

II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding.  28 U.S.C. §§ 157 and 1334.

III. <u>DISCUSSION</u>

    A.  <u>Standard of Review</u>

        1.  <u>Rule 12(b)(6)</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, governs a motion to dismiss for failure to state a claim.  <u>Joseph v. Frank (In re Troll Commc'ns, LLC)</u>, 385 B.R. 110, 116 (Bankr. D. Del. 2008).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  At this stage in the proceeding, it is not a question of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u>, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982).

Since the <u>Twombly</u> and <u>Iqbal</u> decisions, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading . . . ." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This new standard requires "a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." <u>Id.</u>  It is insufficient to provide "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . ." <u>Iqbal</u>, 129 S. Ct. at 1940 (citing <u>Twombly</u>, 550 U.S. at 555).  Under the heightened standard, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under <u>some</u> viable legal theory." <u>Twombly</u>, 550 U.S. at 562 (citation omitted).  The Court, in order to determine whether a claim meets this requirement, must "draw on its judicial experience and common sense." <u>Burtch v. Huston (In re</u>

6

USDigital, Inc.), 443 B.R. 22, 35 (Bankr. D. Del. 2011) (citation omitted).

In Fowler, the Third Circuit articulated a two-part analysis to be applied in evaluating a complaint. Fowler, 578 F.3d at 210-11. First, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citation omitted). Second, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (citation omitted).

The moving party has the burden of demonstrating that dismissing the complaint is appropriate. Troll Commc'ns, LLC, 385 B.R. at 117 (citation omitted).

        2.    Rule 9(b)

A claim for fraud must comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure which "requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted). For example, the plaintiff must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (citation and internal quotations omitted). A

7

bankruptcy trustee, as a third party outsider, however, is
generally afforded greater liberality when pleading fraud.
<u>Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link
Telecom Corp.)</u>, 327 B.R. 711, 717 (Bankr. D. Del. 2005) (citation
omitted).

      B.   <u>Motion to Dismiss</u>

          1.   <u>The Assignment of Claims</u>

With respect to six claims alleged in the Complaint, the
Plaintiff asserts that pursuant to the Settlement Agreement and
with the approval of the DOE, it has been assigned the Trustee's
claims against the auctioneers.  The Defendants argue that, under
that Agreement, an assigned claim might be precluded from
assignment if challenged by a third party.

The pertinent provision in the Settlement Agreement states
as follows:

> The Trustee hereby unconditionally and irrevocably
> assigns to Owner [the Plaintiff] any and all claims
> that he or any of the Chapter 7 estates may have
> against any third-party relating to the 9586 Property .
> . . .  <u>In the event that any third-party asserts that
> an Assigned Claim may not be assigned and a Court
> determines by a Final Order that the Trustee is
> precluded from assigning any Assigned Claim to Owner
> for any reason, . . . the Trustee hereby agrees to make
> good faith efforts to employ [Plaintiff's counsel] . .
> . to pursue any and all such claims on behalf of the
> Trustee and/or the Chapter 7 estates (the "Assigned
> Claim Litigation") . . . .  [In that event] . . . the
> proceeds of the Assigned Claim Litigation, whether by
> settlement or otherwise, shall belong to [the
> Plaintiff] . . . .</u>

(Adv. D.I. 19, Ex. B, § 13) (emphasis added).

8

The Court agrees with the Defendants that the Settlement Agreement does acknowledge that a third party may challenge the assignability of a claim, although it does not state what the basis of that challenge could be.

The Defendants argue that their basis for challenging the assignability of the claims is that the Auction Agreement contains an anti-assignment provision.  Section 11.5 of the Auction Agreement provides:

> This Agreement shall not be assigned by the Trustee or [Defendants] without the express written consent of the other Party or the DOE.  This Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors and permitted assigns.

(Adv. D.I. 1, Ex. B, § 11.5) (emphasis added).

The Plaintiff argues that this provision only precludes the assignment of the contract itself; it does not bar the assignment of the Trustee's claims (even one for breach of the contract). See, e.g., Folgers Architects Ltd. v. Kerns, 633 N.W.2d 114, 125-27 (Neb. 2001) (citing, with approval, cases holding that anti-assignment provisions prohibiting assignment of a contract do not affect the assignability of a claim for breach of contract).

The Defendants argue, however, that even if the breach of contract claim was properly assigned, the Plaintiff cannot pursue it directly.  See SLMSoft.com, Inc. v. Cross Country Bank, No. Civ. A. 00C09163 (JRJ), 2003 WL 1769770, at *10 (Del. Super. Ct. Apr. 2, 2003).

9

The Court finds that the Defendants' reliance on SLMSoft.com is misplaced. Unlike in the instant case, the issue in SLMSoft.com was not whether a breach of contract claim was assignable. Instead the threshold issue in that case was whether the assignment of a contract, an IP Agreement, constituted a material breach of the agreement itself. Id., at *5, *9. That case is, therefore, factually distinguishable.

The Court agrees with the Plaintiff that the anti-assignment provision in the Auction Agreement does not bar its action. In this case, the Trustee has not assigned his contract to the Plaintiff; he has assigned his breach of contract claim. That is not precluded by the anti-assignment provision of the Auction Agreement. Therefore, the Court concludes that the Plaintiff can bring the assigned breach of contract claim against the Defendants.

### 2.  Statute of Limitations

The Defendants assert that the Plaintiff's assigned negligence claim and its direct negligence and nuisance claims are barred by Colorado's two-year statute of limitations.[4]  The Defendants contend that the Plaintiff's claims accrued at least

---

[4]  The parties do not dispute the applicability of the Colorado two-year statute of limitations to the negligence claims and the nuisance claim. COLO. REV. STAT. ANN. § 13-80-102(1)(a) (West 2014). The other claims (for fraud and breach of contract) are subject to Colorado's three-year statute of limitations. COLO. REV. STAT. ANN. § 13-80-101(1)(c) (West 2013).

by January 17, 2013, when the Plaintiff filed its proofs of claim for the pre- and post-petition contamination of the Property.

The Defendants contend that the Plaintiff knew or should have known of potential claims against the Defendants when it provided statutory notice to the Trustee of the Plaintiff's claims for environmental contamination.  The Defendants further argue that the Plaintiff received sampling results in December of 2012 that indicated that contamination might have spread beyond the Restricted Area.  The Defendants argue that this knowledge, coupled with the fact that the Plaintiff knew of the Defendants' engagement as auctioneers since August of 2012, establishes that the Plaintiff had knowledge of the alleged claims more than two years before the Complaint was filed on January 19, 2015.

The Plaintiff responds that the claims are not barred by the statute of limitations for several reasons.  First, the Plaintiff contends that the Complaint was timely filed because January 17, 2015, was a Saturday and Colorado law extends the deadline to the next business day.  Matthews v. City & Cnty. of Denver, 20 P.3d 1227, 1228-29 (Colo. App. 2000).  The Plaintiff also asserts that it did not learn of the contamination beyond the Restricted Area until after it filed its proof of claim on January 17, 2013.

More importantly, the Plaintiff submits that this issue should not be resolved at the motion to dismiss stage because the question of when the Plaintiff knew or should have known of its

11

rights is a question of fact.  See, e.g., CAMAS Colorado, Inc. v.
Bd. of Cnty. Comm'rs, 36 P.3d 135, 139 (Colo. App. 2001) (noting
that a statute of limitations defense should generally not be
raised by a motion to dismiss, unless, "the bare allegations of
the complaint reveal that the action was not brought within the
required statutory period" (citation omitted)).  Indeed, courts
recognize that "[w]hether a particular claim is time barred
presents a question of fact and may only be decided as a matter
of law when 'the undisputed facts clearly show that the plaintiff
had, or should have had the requisite information as of a
particular date.'"  Wagner v. Grange Ins. Ass'n, 166 P.3d 304,
307 (Colo. App. 2007) (citation omitted).  Furthermore, "[t]he
determination of when a cause of action accrues depends upon
'knowledge of the facts essential to the cause of action, not
knowledge of the legal theory upon which the action may be
brought.'"  Id. (citation omitted).

The Court agrees with the Plaintiff.  The Court finds that
the Complaint, on its face, does not establish that the action
was not brought within the required statutory period.  Second,
when the Plaintiff had "knowledge of the facts essential to the
cause of action" is a question of fact that has not been
developed at this stage of the proceedings.  Therefore, the Court
will not dismiss the Complaint on the basis of the statute of
limitations.

3.   <u>Breach of Contract</u>

The Plaintiff asserts that the Defendants breached the Auction Agreement by, among other things, their negligent supervision of the auction, which resulted in contamination outside the Restricted Area.

The Defendants seek to dismiss this count for failure to state a claim for relief.  The Defendants argue that the Plaintiff attributes fault to them for <u>inaction</u>.  The Defendants note that the Complaint is devoid of any allegations as to what <u>actions</u> of the Defendants resulted in the spread of the contamination.  They contend that under Section 2.4 of the Auction Agreement they are not responsible for the action of others:

> In the event that the Facilities or the Assets contain any environmental hazards, toxic waste or any type of hazardous material in any form whatsoever <u>not caused by or resulting from the actions</u> of [Defendants] or any Supervisor, [Defendants] <u>shall not be</u> responsible for containment, storage or removal of same.

(Adv. D.I. 1, Ex. B, § 2.4) (emphasis added).

The Defendants argue that the list of services to be provided by them did not include supervising or preventing contamination.  Section 2.2 of the Auction Agreement provides:

> [Defendants] shall provide the Trustee with the following Services with respect to the conduct of the Auction, which Services shall be provided in a <u>professional manner:</u>
>     (a) organize, implement, manage and conduct the Sale of the Assets;
>     (b) provide an adequate number, at [Defendants']

13

sole discretion, of qualified Supervisors to supervise
and conduct the Sale;
　　(c) oversee and control the liquidation, disposal and
the buyers [sic] removal of Assets sold at the Sale, handle
all collections and invoicing and provide Trustee with final
settlement reports after the Sale;
　　(d) implement appropriate advertising to
effectively sell the Assets. [Defendants] shall be
authorized to use the business name of "Abound Solar"
in advertising placed by [Defendants];
　　(e) tag and catalogue the Assets for the Sale;
　　(f) generate reasonably necessary documentation
such as bills of sale, title transfers to effectuate
the Sale; and
　　(g) provide such other related services deemed
necessary or prudent by the Trustee and/or [Defendants]
to effectively conduct the Sale.

(Adv. D.I. 1, Ex. B, § 2.2) (emphasis added).

The Plaintiff argues that the Auction Agreement does not
relieve the Defendants from liability for their inactions in not
preventing the facilities from becoming contaminated and for
their failure to properly supervise the disassembly of
contaminated materials.  The Plaintiff contends that the
Defendants assumed responsibility for ensuring that the Auction
and the equipment removal would occur in an environmentally safe
manner.  The Plaintiffs argue, therefore, that the Defendants are
responsible for any contamination caused by their failure to
fulfill that obligation.

In support, the Plaintiff relies heavily on the Proposal the
Defendants submitted to the Trustee and the DOE prior to their
engagement.  It argues that the Proposal proves the Defendants
knew environmental safety was critical to the proper management

14

of the auction.  Specifically, the Proposal stated:

- It is of critical importance when working within the confines of Solar, Semiconductor and other related facilities where extremely dangerous gases are present, to be vigilant with any work being performed around such hazards.  With this in mind coupled with the knowledge that our teams and riggers will be working together while decontamination procedures are ongoing, <u>it will be critical to establish and enforce policies and procedures</u> with Abound personnel that detail certain safe policies and procedures.  To this end we have established the following which will be expanded upon/modified during our operational meetings with the onsite Abound teams:
- Only pre qualified, highly experienced, clean tech knowledgeable rigging concerns will be allowed to provide disassembly, rigging and removal services for items sold.
- All such providers must provide proof of proper insurance levels acceptable to both Auctioneer & Abound.
- All such providers must review, understand and sign off on established policies and procedures established by Abound, especially as they relate to operating in the clean rooms, post decontamination.
- Establish Pre-Determined Removal and Loading Quotes for Potential Buyers.
- Supervise Removal Process and Loading Dock Schedule with Client.

(Adv. D.I. 1, Ex. A at p. 18) (emphasis added).

The Plaintiff also notes that the Auction Agreement required the Defendants to "release, indemnify, defend and hold the Trustee and his representatives, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefore, . . . arising out of (a) the performance or failure of performance of the Agreement, . . . ."  (Adv. D.I. 1, Ex. B, § 8.1.)

15

To succeed on a breach of contract claim under Delaware law, a plaintiff must establish: "(1) a contractual obligation; (2) breach of that obligation by the defendant; and (3) resulting damage to the plaintiff[]." Greenstar, LLC v. Heller, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (citation omitted).

"It is not necessarily true that a court considering a Rule 12(b)(6) motion in the context of a contract dispute must accept as true the construction of a contract proffered by the plaintiff." Six Flags, Inc. v. Parc Mgmt., LLC (In re Premier Int'l Holdings, Inc.), 443 B.R. 320, 333 (Bankr. D. Del. 2010) (quoting Falkenberg Capital Corp. v. Dakota Cellular, Inc., 925 F. Supp. 231, 236 (D. Del. 1996)). Further, "[u]nder Delaware law, questions of contract interpretation can be pure questions of law that are appropriate to consider on a motion to dismiss." MCG Capital Corp. v. Maginn, No. Civ. A. 4521-CC, 2010 WL 1782271, *8 (Del. Ch. May 5, 2010) (citing Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020, 1030 (Del. Ch. 2006)). The court, however, may not choose between two reasonable interpretations. Id. (citation omitted). The court may only dismiss a claim if the defendant's interpretation is the only reasonable one. Id. (citation omitted). "Agreements must be interpreted 'in accord with the parties' intent.'" Premier Int'l Holdings, 443 B.R. at 334 (citation omitted). In addition, "language that has a plain meaning 'does not become ambiguous

16

merely because the parties urge different interpretations in the litigation.'" Id. (citations omitted).

In general, "[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997) (citations omitted). However, the Delaware Supreme Court noted that "[t]here may be occasions where it is appropriate for the trial court to consider some undisputed background facts to place the contractual provision in its historical setting without violating this principle. But the trial court must be careful in entertaining background facts to avoid encroaching on the basic principles set forth herein." Id. at 1232 n.7.

With these principles in mind, the Court cannot, at this time, conclude that the Defendants' interpretation, that it had no responsibility under its general supervisory duties for contamination caused by others, is the only reasonable one. MCG Capital Corp. v. Maginn, No. Civ. A. 4521-CC, 2010 WL 1782271, at *8 (Del. Ch. May 5, 2010) (citation omitted). The Court requires a further developed factual record to determine what the parties' intent was with respect to the services to be provided. Therefore, the Court will deny the Motion to Dismiss the breach of contract claim.

17

4.   <u>Unjust Enrichment Claim</u>

The Defendants argue that the unjust enrichment claim must be dismissed because an unjust enrichment claim is not permitted "when an express contract covers the same subject matter." <u>Mandelbaum v. Fiserv, Inc.</u>, 787 F. Supp. 2d 1226, 1243 (D. Colo. 2011).

The Plaintiff disagrees and argues that a claim for unjust enrichment can be pled in the alternative if the validity of an agreement is challenged. <u>See, e.g.</u>, <u>Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP</u>, C.A. No. 7906-VCG, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014) (citation omitted). The Plaintiff further argues that "[i]f the elements of unjust enrichment are established, a plaintiff may be entitled to relief, even in the face of a contract with a clearly expressed contrary intent, if justice requires." <u>Lawry v. Palm</u>, 192 P.3d 550, 564 (Colo. App. 2008) (citation omitted).

The Defendants argue that <u>Great Hill</u> is inapposite because the validity of the Auction Agreement has not been challenged. They further argue that the Auction Agreement exclusively governs the relationship and the allocation of liability between the Trustee and the Defendants. <u>BAE Sys. Info. and Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.</u>, C.A. No. 3099-VCN, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009) (denying an unjust enrichment claim because a contract that "comprehensively governs

18

the parties' relationship" controls (citation omitted)).

The Court agrees with the Defendants.  The Auction Agreement covers the same subject matter as the Plaintiff's unjust enrichment claim, and therefore, the latter claim cannot be pursued.  See, e.g., Bedard v. Martin, 100 P.3d 584, 592 (noting that where an express contract covers the same subject matter, a party is precluded from recovering under an "implied-in-law contract" (citing Interbank Invs., LLC v. Eagle River Water & Sanitation Dist., 77 P.3d 814, 816 (Colo. App. 2003)).  See also Echostar Satellite, L.L.C. v. Splash Media Partners, L.P., Civ. A. No. 07-cv-02611-PAB-BNB, 2010 WL 3873282, at *8 (D. Colo. Sept. 29, 2010) ("The fact that [Plaintiff's] breach of contract claim may fail does not allow [Plaintiff] to plead unjust enrichment in the alternative.").

The Lawry case relied upon by the Plaintiff is inapposite, because, in that case, the agreement between the parties did not address the subject of the plaintiff's claim.  192 P.3d at 564. Further, there is no argument that the Auction Agreement is invalid and, therefore, the Great Hill case is also inapplicable. 2014 WL 6703980, at *27.

As a result, the Court will dismiss the Plaintiff's unjust enrichment claim and deny the Plaintiff's request for leave to add it as an alternative claim.

19

5.    <u>Assigned Negligence Claim</u>

The Defendants argue that the assigned negligence claim must be dismissed because it is barred by the Economic Loss Rule. Under the Economic Loss Rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." <u>Engeman Enters., LLC v. Tolin Mech. Sys. Co.</u>, 320 P.3d 364, 368 (Colo. App. 2013) (citation omitted).

The Defendants contend that they did not owe any duty of care independent of the Auction Agreement. The Defendants further argue that if the Court were to allow the tort claims to go forward, it would defeat the contractual allocation of risk negotiated between the Defendants and the Trustee.

The Plaintiff contends that the Defendants are "landowners" under the Colorado Premises Liability Statute and, as such, had an independent "duty to prevent activities and conditions . . . [that] creat[e] an unreasonable risk of harm to others." <u>Bd. of Cnty. Comm'rs of La Plata, Colorado v. Brown Group Retail, Inc.</u>, 598 F. Supp. 2d 1185, 1194 (D. Colo. 2009) (citation omitted). <u>See also</u> <u>Pierson v. Black Canyon Aggregates, Inc.</u>, 48 P.3d 1215, 1221 (Colo. 2002) (noting that an independent contractor may constitute a "landowner" under the statute). The Plaintiff argues that this duty renders the Economic Loss Rule

20

inapplicable.  In addition, the Plaintiff contends that Colorado
law allows a plaintiff to plead different theories of liability
in the alternative.  See COLO. REV. STAT. ANN. 8(e)(2) (West 2004)
("A party may set forth two or more statements of a claim or
defense alternately or hypothetically, . . . .  [T]he pleading is
not made insufficient by the insufficiency of one or more of the
alternative statements.").

The Defendants contend that they did not owe an independent
duty to the Plaintiff different from the contractual duty they
owed.  See Engeman Enters., LLC v. Tolin Mech. Sys. Co., 320 P.3d
364, 368-69 (Colo. App. 2013) (granting summary judgment to the
defendant because defendant's duty of care under the contract
"was identical to the tort duty of care which plaintiff alleged
had been breached.").  The Defendants further argue that the
cases the Plaintiff relies upon are distinguishable because the
purpose of the Colorado Premises Liability Statute is not to
impose duties on landowners to other landowners, rather it is "to
clarify and to narrow private landowners' liability to persons
entering their land, based upon whether the entrant is a
trespasser, licensee, or invitee."  Pierson, 48 P.3d at 1219.

In Engeman Enters., the plaintiff hired the defendant to
perform emergency repair work at the plaintiff's cold storage
facility.  320 P.3d at 367.  Pursuant to the contract, the
defendant was obligated to perform the work in a "prudent and

21

workmanlike manner." _Id._  The defendant accidently overfilled the tank system permeating the entire facility with ammonia resulting in substantial cleanup and repair costs.  _Id._

The Court of Appeals affirmed the trial court's summary judgment in favor of the defendant on the tort claim.  In doing so, the Court considered three factors to determine whether there was a duty independent of the contractual duty: "'(1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; _and_ (3) whether the negligence duty differs in any way from the contractual duty.'"  _Id._ at 368 (quoting _BRW, Inc. v. Dufficy & Sons, Inc._, 99 P.3d 66, 74 (Colo. 2004)).

The Court, at this stage in the proceeding, is unable to determine whether the Defendants owed an independent duty of care to the Plaintiff different from the contractual duty.  As discussed at length _supra_, the contractual duties are in dispute in this case and the Court requires a more factually developed record with respect to the duties owed and the services to be provided under the Auction Agreement before determining whether the assigned negligence claim is barred by the Economic Loss Rule.  Accordingly, the Court will not dismiss that claim.

      6.   Fraud and Negligent Misrepresentation

      a.   Economic Loss Rule

The Defendants contend that the assigned fraud and negligent

misrepresentation claims also must be dismissed under the
Economic Loss Rule because Colorado courts have held that
statements with respect to abilities and contract performance are
barred by it.  See, e.g., Van Rees v. Unleaded Software, Inc.,
No. 12CA1014, 2013 WL 6354532 (Colo. App. Dec. 5, 2013) (finding
that defendant's promises were not "independent of its
contractual duties").

The Plaintiff argues that the statements the Defendants made
in the Proposal and prior to the execution of the Auction
Agreement were made to induce the Trustee to enter into the
Auction Agreement.  (Complaint at ¶ 27.)  As a result, the
Plaintiff contends that the tort claims can exist independently
of the breach of contract claim.  See Brody v. Bock, 897 P.2d
769, 776 (Colo. 1995) (holding that a breach of contract claim
does not require the dismissal of a fraud claim when the "gist of
the fraud action is [Plaintiff's] change of position in
justifiable reliance on [Defendant's] knowing false statement");
Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 72
(Colo. 1991) (stating that it is "clear that a contracting
party's negligent misrepresentation of material facts prior to
the execution of an agreement may provide the basis for an
independent tort claim asserted by a party detrimentally relying
on such negligent misrepresentations").

The Court concludes that the Plaintiff's claims are not

simply that the Defendants misrepresented their ability or intent to perform their contract with the Trustee, as were the claims in Van Rees.  2013 WL 6354532, at *3.  Instead, the Plaintiff argues that the Defendants made other material misrepresentations which induced the Trustee to hire them.  The Court concludes that those claims are independent of the breach of contract claim.  Brody, 897 P.2d at 776.  See also Town of Alma v. AZCO Constr., Inc., 10 P.3d 1256, 1263 (Colo. 2000) (noting "that certain common law claims that sound in tort and are expressly designed to remedy economic loss may exist independent of a breach of contract claim" (citation omitted)); URS Group, Inc. v. Tetra Tech FW, Inc., 181 P.3d 380, 391 (Colo. App. 2008) (allowing plaintiff to assert a negligent misrepresentation claim for alleged misrepresentations that occurred prior to the parties' execution of their contract); Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998) (noting that "the legal duty not to fraudulently procure a contract" is an independent duty (citation omitted)).

At this time, the Court cannot conclude that the Defendants' representations in the Proposal were not independent of the representations in the Agreement itself.  Therefore, the Court will not dismiss the fraud and misrepresentation claims on the basis of the Economic Loss Rule.

b.    <u>Sufficiency of the Misrepresentation Claims</u>

In the Complaint, the Plaintiff alleges that the Defendants provided the Proposal to the Trustee and the DOE "with the intent that they rely on it in connection with the process of selecting an auctioneer."  (Complaint at ¶¶ 27, 104.)  The Plaintiff further alleges that the Defendants never intended to "decontaminate estate assets, to utilize appropriately trained personnel, to implement appropriate safety measures, or to properly supervise the auction, disposal, and removal of highly contaminated equipment from the Building."  (Complaint at ¶ 106.)

The Defendants contend that the Plaintiff's allegations are made only "upon information and belief" and lack a sufficient factual basis.  The Defendants argue that the Complaint is devoid of any actual false representation or omission of a material fact, which was actually relied upon by the Trustee and resulted in injury.  The Defendants specifically contend that the Complaint is devoid of any facts that the Defendants actually chose "unqualified" personnel.

A plaintiff, in order to succeed on a common law fraud claim under Colorado law, must prove "a false representation of a material fact" which is actually relied upon by the plaintiff and resulted in damages.  <u>Brody</u>, 897 P.2d at 775-76.  <u>See also</u> <u>Tillman v. Pepsi Bottling Grp., Inc.</u>, 538 F. Supp. 2d 754, 783 (D. Del. 2008).  "Fraud requires more than the mere

25

nonperformance of a promise or the failure to fulfill an agreement to do something at a future time." Nelson v. Gas Research Inst., 121 P.3d 340, 343 (Colo. App. 2005) (citation omitted). However, "'[a] promise concerning a future act, when coupled with a present intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud.'" Id. (quoting Stalos v. Booras, 34 Colo. App. 252, 255-56, 528 P.2d 254, 256 (1974)).

To succeed on a claim for negligent misrepresentation, a plaintiff in Colorado must also show that the defendant "supplied false information . . . on which other parties justifiably relied." Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A., 892 P.2d 230, 236 (Colo. 1995) (citation omitted).

The Court concludes that the Complaint contains sufficient allegations from which the Court could find that the Defendants engaged in misrepresentations with respect to the implementation, and later disregard, of safety procedures. (Complaint ¶¶ 42, 44.) Accordingly, the Court will not dismiss these claims.

7.    Direct Negligence Claim

The Defendants argue that the Plaintiff's direct negligence claim must fail as a matter of law because the Defendants did not owe a duty to the Plaintiff and the Complaint is devoid of any facts that establish such a duty was owed. The Defendants argue that they did not have any duty under the Auction Agreement to

26

prevent the spread of contamination.  The Defendants also suggest that the Plaintiff is invoking the "assumed duty doctrine" which requires assent on their part, which they did not give. Jefferson Cnty. School Dist. R-1 v. Justus By and Through Justus, 725 P.2d 767, 770 (Colo. 1986) (noting that "a party may assume duties of care by voluntarily undertaking to render a service" (citations omitted)).

The Plaintiff argues that the services the Defendants were hired to perform gave rise to common law duties of reasonable care.  See, e.g., Metropolitan Gas Repair Serv., Inc. v. Kulik, 621 P.2d 313, 315-17 (Colo. 1980).  In Metropolitan Gas Repair, the plaintiff brought a negligence action against three contractors for property damage resulting from an explosion caused by a defect in the heating system.  The Colorado Supreme Court affirmed the holding that a heating contractor's duty is not limited to its contract, but rather gives "rise to a duty to perform its work with reasonable care and skill."  Id. at 316. In this case, the Plaintiff alleges that the Defendants did not meet the standard of care for their profession and/or industry. (Complaint at ¶ 88.)

The Court concludes that the Plaintiff has stated a claim for negligence.  The Defendants were engaged to manage the auction of highly contaminated estate assets.  As such, they had an independent duty of reasonable care.  See, e.g., Metropolitan

27

Gas Repair, 621 P.2d at 315-17.  The Court finds that the
Complaint alleges sufficient facts from which the Court could
find negligent conduct by the Defendants resulting in the spread
of contamination beyond the Restricted Area.  Therefore, the
Motion to Dismiss will be denied as to this claim.

       8.   <u>Nuisance Claim</u>

     The Plaintiff alleges that the Defendants "[b]y managing the
Auction, disassembly, and removal of highly contaminated
equipment in the Building, portions of which were highly
contaminated, without providing adequate safety protocols,
management or supervision, . . . engaged in intentional,
negligent, and/or unreasonably dangerous activities" resulting in
a nuisance.  (Complaint at ¶ 98.)  The Plaintiff argues that the
nuisance claim should not be dismissed because the question of
whether the activity was unreasonably dangerous is a question of
fact to be decided at trial.  <u>See</u> <u>Pub. Serv. Co. v. Van Wyk</u>, 27
P.3d 377, 391 (Colo. 2001).

     The Defendants argue that, as consultants, they did not
engage in any "unreasonably dangerous activity."  The Defendants
contend that the unreasonably dangerous activities involving
cadmium were performed only by the Debtors during the solar panel
manufacturing operations.

     To succeed on a private nuisance action, a plaintiff must
establish that the defendant "unreasonably interfered with the

use and enjoyment of his property." <u>Lowder v. Tina Marie Homes,</u>
<u>Inc.</u>, 601 P.2d 657, 658 (Colo. App. 1979) (citing <u>Miller v.</u>
<u>Carnation Co.</u>, 33 Colo. App. 62, 516 P.2d 661 (1973)).  Under
Colorado Law, a plaintiff must show "nuisance is predicated upon
a substantial invasion of a plaintiff's interest in the use and
enjoyment of his property when such invasion is: (1) intentional
and unreasonable; (2) unintentional and otherwise actionable
under the rules for negligent or reckless conduct; or (3) so
abnormal or out of place in its surroundings as to fall within
the principle of strict liability." <u>Pub. Serv. Co.</u>, 27 P.3d at
391 (citations omitted).  In addition, the interference must be
substantial, i.e. offensive or causing inconvenience or annoyance
to a reasonable person in the community.  <u>Id.</u> (citation omitted).

The Court finds that the Plaintiff has pled sufficient facts
for the Court to conclude that the Defendants engaged in
unreasonably dangerous activity by their negligent conduct of the
auction.  As a result, the Court will deny the Motion to Dismiss
the nuisance claim.

9.  <u>Violation of the CCPA</u>

"To prevail on a CCPA claim, a plaintiff must prove five
elements: (1) the defendant engaged in an unfair or deceptive
trade practice; (2) the challenged practice occurred in the
course of the defendant's business, vocation, or occupation; (3)
the challenged practice significantly impacts the public as

29

actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; <u>and</u> (5) the challenged practice caused the plaintiff's injury." <u>Park Rise Homeowners Ass'n, Inc. v. Res. Constr. Co.</u>, 155 P.3d 427, 434-35 (Colo. App. 2006) (citing <u>Crowe v. Tull</u>, 126 P.3d 196 (Colo. 2006)).  In addition, a CCPA claim must be pled with particularity pursuant to Rule 9(b).  <u>See</u> <u>Duran v. Clover Club Foods Co.</u>, 616 F. Supp. 790, 793 (D. Colo. 1985).

The Defendants contend that the Plaintiff failed to plead the "public impact" element required for a claim under the CCPA. <u>See, e.g.</u>, <u>Brodeur v. American Home Assurance Co.</u>, 169 P.3d 139, 155 (Colo. 2007) (noting that a private wrong not affecting the public is "not actionable under the CCPA" (citation omitted)).

In assessing whether the alleged conduct had a public impact, the Court must consider the following factors: "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; <u>and</u> (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future." <u>Id.</u> at 155 (citation omitted).  Furthermore, such practice must "significantly impact the public." <u>Id.</u> at 156 (citation omitted).

30

The Defendants argue that the Plaintiff failed to plead any facts to demonstrate that any consumers have been impacted in the past or will be impacted in the future.  The Defendants further argue that their statements were not in a "widely-disseminated brochure or internet advertisement."  Instead, the Defendants contend, that their Proposal was uniquely tailored to a specific project and therefore could not have had an impact or effect on anyone other than the Trustee.  The Defendants further submit that the Trustee is a sophisticated party with experience in estate auctions.

The Plaintiff responds that the Defendants' deceptive practices sufficiently "impacted the public" to allow a claim under the CCPA.  The Plaintiff alleges that the Defendants' "representations were contained in brochures, verbal representations, conduct, listing materials, and warranty agreements, all or some of which were widely distributed to the public and were approved by the Auctioneers."  (Complaint at ¶116.)

The Court agrees with the Defendants that the Plaintiff failed to meet the heightened pleading standard required for a CCPA claim.  Specifically, the Plaintiff fails to identify the "what, when, where and how" with respect to other parties who have allegedly received similar brochures/proposals from the Defendants or were impacted by the Proposal made to the Trustee

in this case.  <u>See, e.g.,</u> <u>Jacobs v. Credit Suisse First Boston</u>, No. 11-CV-00042 CMA-KLM, 2011 WL 4537007, at *4 (D. Colo. Sept. 30, 2011) (stating that a CCPA claim must fail when not all elements are established (citation omitted)).  Consequently, the Court will dismiss the Plaintiff's CCPA claim.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will dismiss the unjust enrichment claim and the CCPA claim.  The Court will deny the Motion to Dismiss with respect to the other claims.

An appropriate Order follows.

Dated: March 1, 2016                    BY THE COURT:

                                        Mary F. Walrath
                                        United States Bankruptcy Judge

32